**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

SACOREY CLARK,                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )          No. 4:20-cv-00716-PLC
                                        )
PHELPS COUNTY, et al.,                  )
                                        )
            Defendants.                 )

**OPINION, MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiff Sacorey Clark's motion for leave to file an

amended complaint. (Docket No. 15). Plaintiff has attached a copy of his third amended complaint

to the motion. (Docket No. 15-1). Having considered the motion, the Court finds that it should be

granted. Additionally, because plaintiff is proceeding in forma pauperis, the Court has reviewed

the third amended complaint pursuant to 28 U.S.C. § 1915. Based on that review, and for the

reasons discussed below, the Court will dismiss the claims against Phelps County and Advanced

Correctional Healthcare, as well as the official capacity claims against the remaining defendants.

However, the Court will direct the Clerk of Court to issue process on defendants Richard Lisenbe,

Matthew Shults, Steve Lorts, Unknown Dowdy, Dr. Paul Burris, and Dionne Kelly in their

individual capacities.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma

pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To

state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief,

which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

2

## Background

Plaintiff is a self-represented litigant currently incarcerated at the Federal Correctional Institution in Memphis, Tennessee. At the time relevant to this case, however, he was a pretrial detainee at the Phelps County Jail in Rolla, Missouri.

On June 1, 2020, plaintiff initiated this action by filing a civil complaint pursuant to 42 U.S.C. § 1983. (Docket No. 1). His complaint named as defendants Advanced Correctional Healthcare, Paul Burris, John Does #1-3, Dionne Kelly, Richard Lisenbe, Steve Lorts, Phelps County, and Matthew Shults. The complaint was handwritten and not on a Court form.

Plaintiff's complaint included a variety of different claims. For instance, plaintiff asserted that the Phelps County Jail was overcrowded, and that he did not receive proper recreation and exercise. He further asserted that his medical care had been denied and delayed. Perhaps most seriously, he alleged that certain defendants at the Phelps County Jail had conspired to have an inmate attack him, in retaliation for his filing of grievances. Along with the complaint, plaintiff also filed a motion for leave to proceed in forma pauperis. (Docket No. 2).

On July 14, 2020, plaintiff filed a document titled "Pro Se Motion for Relief." (Docket No. 4). In the motion, plaintiff complained about mailroom staff at FCI-Greenville interfering with his legal mail. He requested a court order directing the staff at FCI-Greenville to immediately deliver all mail from this Court. Plaintiff also sought an order ensuring the filing of his amended complaint, granting his motion for leave to proceed in forma pauperis, and directing FCI-Greenville to provide his account statement.

Along with the motion, plaintiff also filed an amended complaint pursuant to 42 U.S.C. § 1983. (Docket No. 5). The amended complaint named Phelps County, Sheriff Richard Lisenbe, Lieutenant Matthew Shults, Sergeant Steve Lorts, John Does #1-4, Advanced Correctional

Healthcare, Paul Burris, and Dionne Kelly as defendants. They were sued in both their individual and official capacities. According to plaintiff, the events in the amended complaint occurred while he was a pretrial detainee at the Phelps County Jail in Rolla, Missouri.

In the amended complaint, plaintiff stated that when he arrived at the Phelps County Jail, "he immediately suffered from the existing [c]ulture of [overcrowding]." (Docket No. 5 at 2). Due to this overcrowding, which resulted in the gym being converted into a housing unit, plaintiff claimed he was denied exercise and recreation. He blamed this on a Phelps County policy, custom, or failure to train.

Plaintiff further alleged that while in Phelps County Jail, he was assaulted by another inmate. (Docket No. 5 at 3). He stated that this assault was ordered by Sheriff Lisenbe, Lieutenant Shults, Sergeant Lorts, and four John Does. According to plaintiff, the assault was ordered in retaliation for plaintiff's filing of grievances. (Docket No. 5 at 4).

Following the alleged assault, plaintiff was taken to the hospital where he was given sutures to close a torn tear duct. (Docket No. 5 at 5). Upon return to the jail, he asserted that he suffered a delay in receiving medical care, which resulted in a bacterial infection in his left eye. (Docket No. 5 at 3). This infection caused diminished vision in that eye. Plaintiff alleged this resulted from the "existing Policy, unwritten policy, custom, culture or pattern and practice" of Advanced Correctional Healthcare. He also claimed that defendant Kelly removed his sutures after a week's delay, and that defendants Kelly and Burris "attempted to conceal" the resulting bacterial infection in plaintiff's eye. (Docket No. 5 at 5-6).

Plaintiff sought compensatory damages in varying amounts for the deprivation of exercise and recreation, for his alleged assault, and for the purportedly inadequate medical treatment that he received. (Docket No. 5 at 10-11).

4

On September 3, 2020, the Court granted plaintiff's motion for leave to proceed in forma pauperis, and assessed an initial partial filing fee. (Docket No. 8). The Court also reviewed his amended complaint pursuant to 28 U.S.C. § 1915. Based on that review, the Court determined that plaintiff's amended complaint was subject to dismissal because it was not on a Court form, used conclusory language, and failed to establish the personal responsibility of each defendant. Plaintiff was directed to file a second amended complaint, and was given instructions on how to do so.

On December 17, 2020, the Court received plaintiff's second amended complaint. (Docket No. 11). As with the earlier complaints, the second amended complaint was brought pursuant to 42 U.S.C. § 1983. It was handwritten on a Court-provided form, and was forty-six pages long. Plaintiff named eleven separate defendants: Phelps County; Sheriff Richard Lisenbe; Jail Administrator Matthew Shults; Correctional Officer Steve Lorts; Correctional Officer John Doe #1; Correctional Officer John Doe #2; Correctional Officer John Doe #3; Correctional Officer John Doe #4; Advanced Correctional Healthcare; Dr. Paul Burris; and Nurse Dionne Kelly. (Docket No. 11 at 11-14). They were sued in both their official and individual capacities. (Docket No. 11 at 14).

Once again, plaintiff asserted that he had been denied his right to recreation and exercise, due to a "custom of overcrowding." (Docket No. 11 at 15). In particular, plaintiff explained that he could not use the gym because it had been turned into additional housing. (Docket No. 11 at 16).

Plaintiff also alleged that Sheriff Lisenbe and Administrator Shults threatened to have another inmate assault him. (Docket No. 11 at 20). He stated that either Officer Lorts or Officer Doe #1 threatened him with retaliation for the filing of grievances. (Docket No. 11 at 22). Officer Doe #2 and Officer Doe #3 also made threats.

At some point after these threats, plaintiff was assaulted by another inmate. (Docket No. 11 at 24). Plaintiff alleged that the assault took place at the "directive/order of the conspiring defendants."

Following the assault, plaintiff stated that he was taken to the hospital for medical care. (Docket No. 11 at 26). While there, he received sutures or stitches. According to plaintiff, the stitches were to be removed in three days, and he was "to be brought back for scheduled therapy for his eyes at a later date." (Docket No. 11 at 27). Plaintiff accused Dr. Burris and Nurse Kelly of failing to remove his stitches in a timely manner, and of not removing them until he had a bacterial infection and pink eye. (Docket No. 11 at 28). He further alleged that Dr. Burris and Nurse Kelly denied him his prescribed medication. With regard to follow-up treatment, plaintiff stated that he was not allowed to receive therapy for his eyes. (Docket No. 11 at 29-30).

As a result of these incidents, plaintiff stated that he suffered injuries that have impaired his vision and his appearance. (Docket No. 11 at 43). He sought compensatory damages in varying amounts for the deprivation of exercise, for his alleged assault, and for the inadequate medical treatment he received. (Docket No. 11 at 43-45).

On April 9, 2021, the Court issued an order directing plaintiff to pay the previously-assessed initial partial filing fee of $11.33. (Docket No. 13). Plaintiff was given thirty days in which to comply. Plaintiff paid the fee on April 23, 2021.

On August 2, 2021, the Court received the instant motion for leave to file an amended complaint, along with a copy of plaintiff's third amended complaint. (Docket No. 15; Docket No. 15-1).

## The Third Amended Complaint

Plaintiff's third-amended complaint is handwritten on a Court form and is sixty-five pages long. He brings this action pursuant to 42 U.S.C. § 1983, naming eleven separate defendants: Phelps County; Sheriff Richard Lisenbe; Jail Administrator Matthew Shults; Correctional Officer Steve Lorts; Correctional Officer Unknown Dowdy; Correctional Officer John Doe #2; Correctional Officer John Doe #3; Correctional Officer John Doe #4; Advanced Correctional Healthcare; Dr. Paul Burris; and Nurse Dionne Kelly. (Docket No. 15-1 at 2-3, 11-14). Defendants are sued in both their official and individual capacities. (Docket No. 15-1 at 14).

The third amended complaint is long, repetitive, and confusingly organized. As best the Court can tell, plaintiff is making three interrelated claims. First, he complains that he was denied access to adequate exercise and recreation at the Phelps County Jail. Second, after utilizing the grievance process to complain about the lack of exercise, plaintiff states that jail staff retaliated against him by directing an inmate to assault him, causing injury. Third, plaintiff alleges that medical staff were deliberately indifferent towards the medical needs caused by that assault.

In his "Statement of Claim," plaintiff asserts that on November 18, 2016, he was transferred from the United States District Court for the Eastern District of Missouri to the Phelps County Jail. (Docket No. 15-1 at 52). At the time, he was a federal pretrial detainee. (Docket No. 15-1 at 11).

Sometime after arrival at the Phelps County Jail, plaintiff learned that the gymnasium had been converted into an additional housing unit to hold federal inmates. (Docket No. 15-1 at 18). He also discovered that there was a policy of turning off the televisions in the pods when inmates engaged in recreation or exercise. (Docket No. 15-1 at 29, 31, 34). Plaintiff was advised that the policy was put in place for inmate safety. (Docket No. 15-1 at 40).

In response to what plaintiff perceived to be a violation of his right to recreation and exercise, plaintiff filed grievances with Sheriff Lisenbe, Administrator Shults, and to either Officer Lorts or Officer Dowdy. (Docket No. 15-1 at 25, 34).

After filing these grievances, plaintiff alleges that he was handcuffed by either Officer Lorts or Officer Dowdy, along with Officer Doe #4, and taken to a disciplinary cell. (Docket No. 15-1 at 34). Plaintiff alleges that Officer Doe #4, held the grievance in one hand while opening the pod door with another, ordering him to step outside the pod. (Docket No. 15-1 at 40). He further claims that Officer Doe #4 said: "This is my supervisor…I suggested to him that we should give you a chance to trash this grievance because we're not [going to] stop enforcing our policy on [not] engaging in recreation and exercise inside the pods. It's a policy for the safety of the inmates. So do you want me to give this grievance back so you can trash it yourself, or do you want us to do it?" Plaintiff responded by stating that he wanted his grievance processed, whereupon he was taken to the disciplinary cell.

While being held in the disciplinary cell, plaintiff states that either Officer Lorts or Officer Dowdy, along with Officers Doe #2 and #3, approached him as a group. (Docket No. 15-1 at 34, 36, 38). Plaintiff alleges that either Officer Lorts or Officer Dowdy said: "Clark, you think you're making a paper trail of grievances that you can use against us in court." Then, Officer Doe #3 purportedly stated: "We're not letting that happen." Either Officer Lorts or Officer Dowdy threatened plaintiff by saying: "Now either stop filing grievances about every little thing that we do or we are [going to] order him to assault your a** every day until you stop." (Docket No. 15-1 at 35, 37, 39). Officer Doe #2 added that "You can tell whomever you want what we had [inmate] Brown do, but nobody will believe you."

According to plaintiff, Sheriff Lisenbe and Administrator Shults also visited him while he was in the disciplinary cell. (Docket No. 15-1 at 24, 29). Plaintiff alleges that Administrator Shults told him that "It wasn't hard for us to recruit detainee Brown," whereupon Sheriff Lisenbe added that "He can't wait for us to give him the order to assault you." Sheriff Lisenbe also said to plaintiff: "We already know…that you would be surprised that we even know about all the numerous confrontations that you had with detainee Brown…You got the T.V. shut off by staff a lot of times for working out and doing all that exercising in the pod that you be doing." (Docket No. 15-1 at 24-25).

Plaintiff further states that Administrator Shults said to him: "It's several times Brown…tried to beat your a\*\*." (Docket No. 15-1 at 25, 29-30). Sheriff Lisenbe then said that "Those inmates won't prevent Brown anymore because you will be reassigned to the new pod with Brown." (Docket No. 15-1 at 25, 30). Administrator Shults next stated to plaintiff that "Brown ain't trust us until we let him meet everybody…he must want to hurt you bad."

Prior to plaintiff being released from the disciplinary cell, he alleges that inmate Dijon Rasheed Brown – who plaintiff claims was recruited to assault him – was reassigned to his housing unit. (Docket No. 15-1 at 52-53). At some point after returning to his housing unit, plaintiff asserts that inmate Brown "entered plaintiff's assigned cell and immediately began brutally striking" him with closed fists. (Docket No. 15-1 at 53). Plaintiff states that no disciplinary action was taken against inmate Brown. (Docket No. 15-1 at 54). As a result of being struck, plaintiff states that his eye duct was torn. (Docket No. 15-1 at 55).

After being attacked by inmate Brown, plaintiff was taken to "the medical room." (Docket No. 15-1 at 25). Plaintiff states that he could view Sheriff Lisenbe patting inmate Brown on the back, telling Brown that "you didn't waste any time…and you whooped Clark good."

9

Plaintiff states that he was treated at the jail by Nurse Kelly, who advised that he needed to go to the hospital to get stitches. (Docket No. 15-1 at 25). Administrator Shults told Nurse Kelly to get him ready for transport. (Docket No. 15-1 at 30).

While walking through the corridor, plaintiff states that Administrator Shults, Officer Doe #2, Officer Doe #3, and Officer Doe #4 were all standing with inmate Brown, telling Brown "how great of [a] job that he had done." (Docket No. 15-1 at 25). In particular, plaintiff heard Administrator Shults tell Brown: "I'm glad you didn't beat on him any worse…We [are going to] have [to] send Clark's hospital bill to the Marshals when the hospital gets done with him. And we don't need the Marshal asking us any questions, but anything you ask for you can get from us, you did better than expected." (Docket No. 15-1 at 30). Plaintiff also saw Officer Doe #2 congratulating inmate Brown while handing him "a new set of clothes." (Docket No. 15-1 at 38).

Plaintiff was taken to the emergency room where he received stitches. (Docket No. 15-1 at 42). According to plaintiff, he was given a treatment plan that consisted of his stitches being removed in three days, prescribed medication, and follow-up visits for physical therapy. He states that this treatment plan was submitted to Nurse Kelly by the transport officer, when plaintiff returned from the hospital.

Plaintiff alleges that the treatment plan he received from the hospital was not followed. Specifically, he alleges that Dr. Burris and Nurse Kelly failed to remove his stitches within the three-day period; failed to give him his prescribed medication; and failed to arrange physical therapy. (Docket No. 15-1 at 42-43, 47). Indeed, when Dr. Burris examined plaintiff, Dr. Burris allegedly told plaintiff that "therapy would not be necessary." (Docket No. 15-1 at 48).

Due to the purported failure by Dr. Burris and Nurse Kelly to follow the treatment plan, plaintiff states that he suffered pink eye, repeated bacterial infections, diminished vision, blurry

10

vision, and headaches. (Docket No. 15-1 at 55). He also suffered an injury to the "beauty, symmetry, or appearance" of his face, "rendering it unsightly, [misshapen], imperfect and/or otherwise deformed" in a permanent manner.

With regard to his specific claims against defendants, plaintiff alleges that Phelps County denied him his constitutional right to recreation and exercise. (Docket No. 15-1 at 17, 57). Likewise, he accuses Sheriff Lisenbe and Administrator Shults of violating his right to exercise and recreation. (Docket No. 15-1 at 57).

Plaintiff also alleges that Sheriff Lisenbe and Administrator Shults, along with Officer Lorts, Officer Dowdy, Officer Doe #2, Officer Doe #3, and Officer Doe #4 retaliated against him in violation of the First Amendment, and were deliberately indifferent to his safety in violation of the Fourteenth Amendment. (Docket No. 15-1 at 57-58).

As to Dr. Burris and Nurse Kelly, plaintiff alleges that they were deliberately indifferent to his medical needs. (Docket No. 15-1 at 59-60). He further claims that Advanced Correctional Healthcare has a policy of "restricting, if not outright denying, follow-up care ordered by a doctor when such care is expensive." (Docket No. 15-1 at 60).

Plaintiff seeks a declaratory judgment stating that the actions of defendants violated his constitutional rights. (Docket No. 15-1 at 62). He further requests both compensatory and punitive damages. (Docket No. 15-1 at 63-64).

The Court notes that plaintiff's third amended complaint replaces his prior complaints, and will be treated as the operative pleading. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, accusing defendants of violating his rights under the First and Fourteenth Amendments. Because he is proceeding in forma pauperis, the Court has reviewed his third amended complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss the claims against Phelps County and Advanced Correctional Healthcare, as well as the official capacity claims against the remaining defendants. However, the Court will direct the Clerk of Court to issue process on defendants Richard Lisenbe, Matthew Shults, Steve Lorts, Unknown Dowdy, Dr. Paul Burris, and Dionne Kelly in their individual capacities.

### A. Phelps County

Plaintiff has alleged that Phelps County violated his right to exercise and recreation. A local governing body such as Phelps County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an

extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of Phelps County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

In this case, plaintiff has not presented sufficient factual allegations to support the proposition that Phelps County has an unconstitutional policy or custom, or that it has been deliberately indifferent in failing to train or supervise its employees.

First, with regard to policy, plaintiff asserts that Phelps County has an unwritten policy of overcrowding, which led to the denial of his right to exercise and recreation. In particular, he states that the jail's gym was repurposed for additional housing, and that when he exercised in his pod, the correctional officers powered off the televisions as a safety measure. These facts, standing alone, are not sufficient to demonstrate a constitutional violation.

Plaintiff appears to rest mainly on the assertion that a gym is constitutionally required by the Fourteenth Amendment. However, he provides no support for the proposition that the lack of a gym is per se unconstitutional. Rather, the Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). To that end, there are two ways to determine whether conditions rise to the level of punishment. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 907 (8th Cir. 2020). First, a plaintiff can show that his or her conditions of confinement were intentionally punitive. *Id*. Second, in lieu of an "expressly demonstrated intent to punish," a plaintiff can "also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id*. If conditions are arbitrary or excessive, it can be inferred that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon pretrial detainees. *Id*. "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

Here, plaintiff has not shown that the lack of a gym, or that a policy of turning off the televisions in the pods when inmates are exercising, is punitive in nature, is not related to a legitimate interest, or is harmful to the safety and well-being of the inmates. For example, there is no indication that plaintiff is entirely denied the ability to exercise, either in his cell or somewhere else. Additionally, there are no facts alleging that he has been kept in his cell for long periods of time, unable to move about. Certainly, there are no facts showing that any lack of "exercise" or "recreation" has put his health or safety at risk, such as through atrophying muscles or other side effects.

Ultimately, plaintiff relies almost entirely on conclusory language in formulating this claim. Indeed, he has even failed to articulate what he means by "exercise" or "recreation," leaving it to the Court to speculate as to what variety of activities he feels he is constitutionally entitled to perform while in jail. The Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). Here, plaintiff's contention that he has been denied his right to exercise based on a Phelps County policy is not sufficiently supported by factual allegations.

Second, as to plaintiff's claim that Phelps County has a custom of overcrowding, which led to the denial of his right to exercise, plaintiff again relies wholly on conclusory pleading. That is, he has not presented facts demonstrating the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct," much less that Phelps County officials were deliberately indifferent to or tacitly authorized such misconduct. Rather than demonstrating a "persistent pattern," plaintiff focuses solely on his own alleged inability to exercise, which he has not established with sufficient facts. As noted above, a court is not required to accept legal conclusions as true. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). In this case, plaintiff's assertions that Phelps County has a custom of overcrowding, and of denying inmates the right to exercise, are conclusions that lack any factual enhancement.

Likewise, plaintiff has not stated a failure to train claim against Phelps County. Such a claim requires notice to the county, typically demonstrated by showing a "pattern of similar constitutional violations by untrained employees." Plaintiff has not presented facts indicating the existence of such a pattern. To the contrary, as discussed above, plaintiff has failed to establish

16

any underlying constitutional violation. In other words, he has not adequately alleged that he was denied access to exercise or recreation in such a way as to violate the constitution.

Finally, to the extent that plaintiff is attempting to hold Phelps County responsible for the actions of the defendants it employs, the Court notes that respondeat superior is not available in a 42 U.S.C. § 1983 claim. *See A.H.*, 891 F.3d at 728 ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory").

For all these reasons, plaintiff has failed to state a claim against Phelps County. Therefore, the claim must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### B.  Advanced Correctional Healthcare

Plaintiff accuses Advanced Correctional Healthcare of refusing him follow-up treatment – specifically, his physical therapy – because of a policy of denying such care due to cost. He further contends that Advanced Correctional Healthcare is liable for his treatment plan not being followed.

Advanced Correctional Healthcare is a private corporation contracted to provide healthcare services at the Phelps County Jail. "A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under

§ 1983"); and *Stearns*, 957 F.3d at 906 (explaining that the "proper test" for determining whether a corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent…official policy that inflicts injury actionable under § 1983").

To state a cause of action, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010). Here, plaintiff's assertion that Advanced Correctional Healthcare is liable for the failure of Dr. Burris and Nurse Kelly to follow his treatment plan is a conclusion entirely unsupported by any factual allegations.

The only facts presented regarding the denial of plaintiff's follow-up care consists of his contention that Dr. Burris and Nurse Kelly did not arrange and schedule his physical therapy. Moreover, plaintiff asserts that Dr. Burris personally examined him and determined that "therapy would not be necessary." These allegations notwithstanding, there is nothing in the third amended complaint to indicate that the actions of Dr. Burris or Nurse Kelly were driven by a policy, custom, or official action on the part of Advanced Correctional Healthcare. For example, plaintiff does not present facts showing that Dr. Burris's treatment decision – which plaintiff admits was based on a "personal examination" – was governed by costs, rather than Dr. Burris's professional expertise.

Similarly, plaintiff does not attempt to explain how the alleged failure of Dr. Burris and Nurse Kelly to timely remove his stitches or give him his medication is somehow attributable to Advanced Correctional Healthcare itself. Instead, he presents these actions as being taken by Dr. Burris and Nurse Kelly personally, without reference to any Advanced Correctional Healthcare policy, custom, or directive.

It appears that plaintiff is attempting to assert liability against Advanced Correctional Healthcare based simply on the fact that they employed Dr. Burris and Nurse Kelly. For example, he alleges that Advanced Correctional Healthcare "should have known" that Dr. Burris and Nurse Kelly had failed to follow through on the treatment plan issued by the emergency room doctor. However, as noted above, Advanced Correctional Healthcare cannot be held liable on a respondeat superior theory. *See Smith*, 499 F.3d at 880.

For all these reasons, plaintiff's claim against Advanced Correctional Healthcare must be dismissed.

### C. Official Capacity Claims

Plaintiff has sued all defendants in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

### i.     Phelps County Employees

Sheriff Lisenbe, Administrator Shults, Officer Lorts, Officer Dowdy, Officer Doe #2, Officer Doe #3, and Officer Doe #4 are all alleged to be employees of Phelps County. As such,

the official capacity claims against them are actually claims against Phelps County itself. To prevail on these claims, plaintiff must establish Phelps County's liability for the alleged conduct. *See Kelly*, 813 F.3d at 1075.

As discussed in detail above, plaintiff has failed to demonstrate the liability of Phelps County for denying him adequate exercise and recreation. Plaintiff has likewise failed to show that Phelps County is liable for the alleged violation of plaintiff's First and Fourteenth Amendment rights with regard to the retaliation he experienced for filing grievances. Specifically, plaintiff has not presented facts – as opposed to conclusions – showing that such retaliation was the product of a Phelps County policy, custom, or failure to train. *See Marsh*, 902 F.3d at 751 (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

First, plaintiff has failed to properly allege that the actions of Sheriff Lisenbe, Administrator Shults, Officer Lorts, Officer Dowdy, Officer Doe #2, Officer Doe #3, and Officer Doe #4 were the result of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters," such as is necessary to demonstrate the existence of an unconstitutional policy.

Second, plaintiff has not established that these defendants acted according to an unofficial custom. That is, he has not alleged the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" Phelps County employees, or that Phelps County officials were aware of this misconduct. Rather, plaintiff's allegations refer to retaliation that he personally suffered, and do not encompass a wider pattern.

Similarly, plaintiff has not demonstrated a failure to train on the part of Phelps County, because he has not alleged that Phelps County "had notice that its procedures were inadequate and

likely to result in a violation of constitutional rights." Such notice generally comes from a "pattern of similar constitutional violations by untrained employees." Again, as discussed above, plaintiff has not presented facts showing a pattern of misconduct, but focuses instead on actions taken against himself alone.

Finally, respondeat superior is not available in a 42 U.S.C. § 1983 municipal liability claim. *See A.H.*, 891 F.3d at 728 ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Thus, Phelps County cannot be liable simply for employing Sheriff Lisenbe, Administrator Shults, Officer Lorts, Officer Dowdy, Officer Doe #2, Officer Doe #3, and Officer Doe #4.

For all these reasons, plaintiff's official capacity claims against Sheriff Lisenbe, Administrator Shults, Officer Lorts, Officer Dowdy, Officer Doe #2, Officer Doe #3, and Officer Doe #4 must be dismissed.

### ii.    Advanced Correctional Healthcare Employees

Dr. Burris and Nurse Kelly are alleged to be employed by Advanced Correctional Healthcare. As such, the official capacity claims against them are actually against Advanced Correctional Healthcare itself, their employer. However, as discussed above, plaintiff has failed to state a claim against Advanced Correctional Healthcare. Therefore, the official capacity claims against Dr. Burris and Nurse Kelly must be dismissed.

### D. Individual Capacity Claims Against Sheriff Lisenbe and Administrator Shults for Denying Plaintiff his Right to Adequate Exercise and Recreation

Plaintiff asserts that Sheriff Lisenbe and Administrator Shults violated his right to exercise and recreation while acting in their individual capacities. As noted above, plaintiff's only allegations in support is his observation that the gym was being used for additional housing, and a

so-called policy by which the televisions in the pods were turned off when inmates were exercising. This is not sufficient to show that plaintiff's Fourteenth Amendment rights were violated.

To determine whether a pretrial detainee's conditions of confinement were unconstitutional, the Court looks at whether the "conditions and restrictions…amount to punishment." *See Bell*, 441 U.S. at 536-37. As previously noted, there are two ways to determine whether conditions rise to the level of punishment. *Stearns*, 957 F.3d at 907. First, a plaintiff can show that his or her conditions of confinement were intentionally punitive. *Id*. Second, in lieu of an "expressly demonstrated intent to punish," a plaintiff can "also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id*. If conditions are arbitrary or excessive, it can be inferred that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon pretrial detainees. *Id*. "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith*, 87 F.3d at 268.

Here, plaintiff has not demonstrated that Sheriff Lisenbe and Administrator Shults took any action with regard to plaintiff's exercise and recreation that can be considered intentionally punitive, or that was not reasonably related to a legitimate governmental purpose. For instance, plaintiff does not allege that Sheriff Lisenbe or Administrator Shults kept him confined to his cell, prevented him from exercising in his cell or elsewhere, or otherwise denied him any ability to move about. Rather, as noted above, plaintiff's accusations regarding exercise and recreation amount to vague statements and unsupported conclusions, none of which delineate what "exercise" and "recreation" plaintiff felt he was entitled to, or how this was specifically hindered in a way violative of the constitution. Therefore, the individual capacity claims against Sheriff Lisenbe and Administrator Shults for denying him the right to exercise and recreation must be dismissed.

**E.  Individual Capacity Claims Against Sheriff Lisenbe, Administrator Shults, Officer Lorts, Officer Dowdy, Officer Doe #2, Officer Doe #3, and Officer Doe #4 for Retaliation and Deliberate Indifference**

Plaintiff has sued Sheriff Lisenbe, Administrator Shults, Officer Lorts, Officer Dowdy, Officer Doe #2, Officer Doe #3, and Officer Doe #4 in their individual capacities, accusing them of retaliation in violation of the First Amendment, and deliberate indifference in violation of the Fourteenth Amendment.

With regard to the retaliation claim, the First Amendment prohibits government officials from retaliating against an individual for speaking out. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). In order to prevail on a First Amendment retaliation claim, a plaintiff "must show that [he] engaged in protected activity, that the [defendant's] actions caused an injury to the [plaintiff] that would chill a person of ordinary firmness from continuing to engage in the activity, and that a causal connection exists between the retaliatory animus and the injury." *Small v. McChrystal*, 708 F.3d 997, 1008 (8th Cir. 2013).

Retaliation does not need to be the "sole motive" in taking an action against the plaintiff, but it must have been a "substantial factor" in the decision. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). Furthermore, the plaintiff must demonstrate that the retaliatory motive was a "but-for" cause of the action. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010). *See also Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007) (explaining that "[i]f there is a finding that retaliation was not the but-for cause…the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind"). That is, plaintiff must show that he was "singled out" because of his exercise of constitutional rights. *Baribeau*, 596 F.3d at 481. *See also Bernini v. City of St. Paul*, 665 F.3d

997, 1007 (8th Cir. 2012) (stating that to establish a causal connection, the plaintiff must show that he was "singled out" because of his exercise of constitutional rights).

As to what constitutes protected activity, the Court notes that the right to be free from retaliation for availing oneself of the grievance process is clearly established in the Eighth Circuit. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). *See also Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010) (stating "that actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983").

In this case, plaintiff states that he filed grievances with Sheriff Lisenbe, Administrator Shults, Officer Lorts, Officer Dowdy, Officer Doe #2, Officer Doe #3, and Officer Doe #4, complaining about the gym being used for additional housing, and about the policy of powering off televisions when inmates exercised in the pods. He alleges that defendants responded to these grievances by threatening him with an assault at the hands of another inmate if he did not stop filing them. Specifically, plaintiff was warned that inmate Brown would be ordered to assault him if he did not cease. According to plaintiff, inmate Brown did eventually assault him, after Brown was moved into plaintiff's housing unit. Following the assault, plaintiff states that defendants congratulated Brown, and that Brown was never disciplined. In short, plaintiff claims that he was physically assaulted for availing himself of the grievance process.

Aside from violating the First Amendment, plaintiff asserts that defendants' actions also amounted to deliberate indifference in violation of the Fourteenth Amendment. As previously noted, the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37. In determining whether pretrial conditions are unconstitutional, a plaintiff can demonstrate either that the

conditions were intentionally punitive, or "were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *See Stearns*, 957 F.3d at 907. In this case, as laid out above, plaintiff has alleged facts establishing that he was intentionally punished by being assaulted by another inmate after filing grievances.

The Court must accept these allegations as true and make all reasonable inferences in plaintiff's favor. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). As such, the Court will direct the Clerk of Court to issue process on Sheriff Lisenbe, Administrator Shults, Officer Lorts, and Officer Dowdy in their individual capacities as to plaintiff's First and Fourteenth Amendment claims.

To the extent that plaintiff has made claims against Officer Doe #2, Officer Doe #3, and Officer Doe #4, the Court cannot issue process on them because they have not been properly identified. However, the Court will not dismiss these Doe defendants at this time, as plaintiff's allegations appear sufficient to permit their identification following reasonable discovery. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985).

### F.  Individual Capacity Claims Against Dr. Burris and Nurse Kelly

Plaintiff has alleged that Dr. Burris and Nurse Kelly were deliberately indifferent to his medical needs. Because plaintiff was a pretrial detainee, his claims fall under the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). However, the Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006). *See also Morris v.*

*Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (stating that a pretrial detainee has the same rights to medical care under the due process clause as an inmate has under the Eighth Amendment).

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

In this case, plaintiff has demonstrated a serious medical need, alleging that he was assaulted by an inmate, resulting in an injury to his eye that required him to go to the hospital. When he left the hospital, a treatment plan was submitted to Nurse Kelly stating that plaintiff's stitches were to be removed in three days, that he was to be given prescribed medication, and that he was to receive follow-up physical therapy. Despite this plan, plaintiff alleges that Dr. Burris and Nurse Kelly failed to timely remove his stitches, failed to give him his medication, and failed to arrange for the physical therapy. As a result, plaintiff's eye became infected, he suffered a loss of vision, and the appearance of his face was altered.

The Court must accept these allegations as true and make all reasonable inferences in plaintiff's favor. *See Jones*, 915 F.3d at 499. As such, the Court will direct the Clerk of Court to issue process on Dr. Burris and Nurse Kelly in their individual capacities as to plaintiff's claim of deliberate indifference to his medical needs.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to file a third amended complaint (Docket No. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall separately file plaintiff's third amended complaint as Docket No. 16.

**IT IS FURTHER ORDERED** that the claims against defendants Phelps County and Advanced Correctional Healthcare, and the official capacity claims against defendants Richard Lisenbe, Matthew Shults, Steve Lorts, Unknown Dowdy, John Doe #2, John Doe #3, John Doe #4, Dr. Paul Burris, and Dionne Kelly are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's exercise and recreation claims against defendants Richard Lisenbe and Matthew Shults in their individual capacities are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendants Richard Lisenbe, Matthew Shults, Steve Lorts, and Unknown Dowdy in their individual capacities as to plaintiff's claims under the First and Fourteenth Amendments. Defendants Lisenbe, Shults, Lorts, and Dowdy shall be served at 500 West Second Street, Rolla, MO 65401.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendants Dr. Paul Burris and Dionne Kelly in their individual capacities as to plaintiff's claim of deliberate indifference to his medical needs. Defendants Burris and Kelly shall be served at the registered agent of Advanced Correctional Healthcare, Inc., 120 S. Central Ave., Clayton, MO 63105.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 10th day of August, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE