UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SACOREY CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-CV-716 PLC |
| | ) |
| PHELPS COUNTY, ET AL., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court on motions for summary judgment filed by Defendants Phelps County Sheriff Richard Lisenbe, Administrator Matthew Shults, Officer Steve Lorts, and Officer Scott Dowdy ("Phelps County Defendants") [ECF No. 73] and Defendants Nurse Practitioner Paul Burris and Nurse Dionne Kelly ("Medical Staff Defendants") [ECF No. 70]. Plaintiff Sacorey Clark did not respond to Defendants' motions.

### I.  Background

Plaintiff Sacorey Clark, a self-represented litigant currently incarcerated at the Federal Correctional Institution in Memphis, Tennessee, seeks relief under 42 U.S.C. § 1983 for Defendants' alleged violations of his constitutional rights during his detention at Phelps County Jail. In the record before the Court, the following facts are undisputed.[1]

Plaintiff was a detainee at Phelps County Jail from November 18, 2016 until May 9, 2017. [ECF No. 75 at ¶¶ 1-2] In early January 2017, Plaintiff submitted a grievance to the jail's

---

[1] The facts are taken from Phelps County Defendants' and Medical Staff Defendants' statements of material facts [ECF Nos. 72 & 75] and the records they submitted in support of their motions for summary judgment [ECF Nos. 72-1 – 72-8, 75-1], which Plaintiff does not dispute.

1

supervisory staff, complaining that "this jail is violating my constitutional right to receive letters, physical recreation and access to the law library…." [ECF No. 75-1 at 106]  Plaintiff filed another grievance in March 2017, claiming that "staff especially [Defendant] Lorts have retaliated against" him for submitting "verbal and written grievances" relating to access to the law library.[2]  [ECF No. 75-1 at 107]

On April 11, 2017, Plaintiff directed a grievance to Defendant Shults, jail administrator, challenging the law library policy and requesting "that all [p]ro se defendants have uninhibited access to the law library anytime [sic] no one else is using it, especially the preceding month to scheduled trial[.]"  [ECF No. 75-1 at 126]  Defendant Shults denied Plaintiff's request.  [Id.]

Three days later, on April 14, 2017, Plaintiff was involved in a physical altercation with detainee Dijon Brown. [ECF Nos. 75 at ¶ 3, 75-1 at 112]  Officers intervened and escorted Plaintiff to the nurse's office for medical attention.  [ECF No. 75-1 at 112]  Defendant Kelly examined Plaintiff, observed a laceration to the left inner eye and swelling to the right orbital area, and sent him to the emergency room at Phelps County Regional Medical Center, where he received treatment for a facial fracture and laceration to eyelid. [Id. at 50, 28]  The emergency room physician advised "[s]titch needs to be taken out in 5-7 days," provided Plaintiff information about his condition, and prescribed Afrin, Claritin, and Augmentin.  [Id. at 26-29]  Defendant Burris

---

[2] A representative of the Phelps County Sheriffs Department responded:

> The policy was shown to you and you are not being discriminated against in anyway [sic].  In fact, we typically give one hour in the law library, which is 15 minutes longer than listed in the policy that you read.  I am passing on to the administrator that you have verbally informed me you would like to challenge the policy currently in place.

[ECF No. 75-1 at 107]

2

modified the prescriptions for Augmentin and Claritin and prescribed ibuprofen 600 mg.  [Id. at 4; ECF No. 72 at ¶¶ 49-51]  Defendant Burris did not approve the Afrin mist prescription.  [Id.]

On April 15, Plaintiff submitted a "medical question," stating:  "my issue is that my stitch on my eye is not high enough to let my skin to properly mend…."  [Id. at 123]  Defendant Kelly responded that she would inform the doctor.  [Id.]

Two days later, Plaintiff submitted a grievance, explaining, "this stitch is not high enough up and my tear duct is going to remain torn which will cause eyesight problems later on where my eyes will have a dry socket, I need to go back to the hospital immediately to get another stitch…."  [Id. at 124]  Plaintiff had a follow-up visit the same day for facial swelling and laceration to the eyelid, and Defendant Kelly noted draining of the left eye and Plaintiff's complaints of pain, redness, and difficulty closing the eye.  [Id. at 25]

Medical Staff Defendants sent Plaintiff back to Phelps County Regional Medical Center on April 18.  [ECF No. 25, 55]  There, the emergency room staff diagnosed Plaintiff with conjunctivitis and prescribed Tobrex ophthalmic drops and ibuprofen 600 mg.  [Id.]

Plaintiff returned to the nurse's office the following day, and Defendant Kelly noted that Plaintiff became "very belligerent," telling her, "I don't have pink eye, you['re] lying."  [Id. at 24]  Defendant Kelly provided Plaintiff copies of the emergency room documentation and "educational sheets" on conjunctivitis.  [Id.]  The same day, when jail staff attempted to isolate Plaintiff to prevent the spread of his infection, Plaintiff refused to cooperate and informed the officers, "you're going to have to use force."  [Id. at 110]  According to the incident report, officers applied a taser "drive stun" to Plaintiff's left leg, secured him in a restraint chair, and wheeled him to a holding cell.  [Id.]

Plaintiff filed his pro se complaint under Section 1983 in June 2020, and subsequently filed several amended complaints. [ECF No. 1]  In his sixty-five-page, handwritten third amended complaint, Plaintiff alleged violations of his constitutional rights against eleven defendants: Phelps County, Lisenbe, Shults, Lorts, "John Doe #1 Dowdy," John Doe #2, John Doe #3, John Doe #4, Kelly, Burris, and Advanced Correctional Healthcare. [ECF No. 17]

The Court reviewed Plaintiff's third amended complaint pursuant to 28 U.S.C. § 1915 and noted that it was "long, repetitive, and confusingly organized." [ECF No. 16 at 7]  Nevertheless, the Court was able to discern the following three interrelated claims:  (1) Phelps County Defendants denied Plaintiff access to adequate exercise and recreation; (2) Phelps County Defendants retaliated against Plaintiff for his use of the grievance process to complain about lack of exercise by directing an inmate to assault him; and (3) Medical Staff Defendants were deliberately indifferent to the serious medical needs Plaintiff suffered as a result of the assault. [Id.]  The Court dismissed Plaintiff's  (1) claims against Phelps County and Advanced Correctional Healthcare, (2) official-capacity claims against the individual defendants, and (3) exercise-and-recreation claims against Defendants Lisenbe and Shults in their individual capacities.[3]  [ECF Nos. 16, 18]

Plaintiff's individual-capacity claims for violations of the First and Fourteenth Amendments remain pending.  In the Third Amended Complaint, Plaintiff alleges that:  (1) in retaliation for Plaintiff's use of the inmate grievance process, Phelps County Defendants encouraged another inmate to assault Plaintiff; and (2) Medical Staff Defendants were deliberately

---

[3] After Plaintiff failed to file a motion for substitution of party providing the correct legal name of defendants in compliance with the Court's order, the Court dismissed his claims against John Doe # 2, John Doe #3, and John Doe #4.  [ECF Nos. 46, 51]

4

indifferent to his resulting medical needs. [ECF No. 17] Defendants move for summary judgment on all claims.

## II. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record]...which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, the non-movant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." Id. at 324 (quotation marks omitted). "It is the nonmoving party's burden to proffer specific factual support by affidavit or other evidence to avoid summary judgment." Cunningham v. Sharpe, No. 4:18-CV-753 DDN, 2019 WL 1762949, at *1 (E.D. Mo. Apr. 22, 2019). Also, pursuant to E.D. Mo. Local Rule 4.01(e), the movant's statement of uncontroverted material facts is deemed admitted unless specifically controverted by the opposing party.

Plaintiff's status as a pro se prisoner does not excuse him from responding to the motions for summary judgment with specific factual support for his claims to avoid summary judgment, or from complying with local rules. Beck v. Skon, 253 F.3d 330, 333 (8th Cir. 2001). With his failure to respond, Plaintiff is deemed to have admitted the facts in Defendants' statements of uncontroverted facts [ECF Nos. 70 & 73] for purposes of the pending motions for summary judgment. Turner v. Shinseki, No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. Jun. 22, 2010) (citing Deichmann v. Boeing Co., 36 F. Supp.2d 1166, 1168 (E.D. Mo. 1999), aff'd 232 F.3d 907 (8th Cir. 2000), cert. denied, 531 U.S. 877). However, Plaintiff's failure to respond to

5

Defendants' motions "does not mean summary judgment should be automatically granted in favor of [the defendants]." Houston v. Corizon Health Care, No. 4:20-CV-291 JAR, 2021 WL 5918741, at *1 (E.D. Mo. Dec. 15, 2021).  Even if the facts as alleged by Defendants are not in dispute, those facts still must establish they are entitled to judgment as a matter of law.  Schierbaum v. Canavan, No. 4:21-CV-573 ACL, 2022 WL 14805783, at *3 (E.D. Mo. Oct. 26, 2022) (citing Reasonover v. St. Louis Cnty., Mo., 447 F.3d 569, 579 (8th Cir. 2006)).

### III.     Discussion

#### A.  Phelps County Defendants' motion for summary judgment

Phelps County Defendants assert they are entitled to summary judgment on Plaintiff's claims of retaliation in violation of the First Amendment and deliberate indifference to his safety in violation of the Fourteenth Amendment. [ECF No. 73]  More specifically, they contend that: (1) they "did not incite any individuals to assault" Plaintiff; and (2) Plaintiff "failed to exhaust administrative remedies available to him in the Phelps County Jail, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a)."[4]  [ECF No. 74 at 2]

A valid claim under section 1983 includes two essential elements:  (1) "the violation of a right secured by the Constitution or laws of the United States," and (2) that "the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).  "[T]he First Amendment prohibits government officials from subjecting an individual to

---

[4] Phelps County Defendants concede that they did not raise Plaintiff's failure to exhaust administrative remedies as an affirmative defense. [ECF No. 74]  The failure to exhaust administrative remedies is an affirmative defense that can be waived. Charron v. Allen, 37 F.4th 483, 489 (8th Cir. 2022) (citing Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001)).  Because the Court finds there is no genuine issue of material fact as to whether Phelps County Defendants either retaliated against Plaintiff in violation of First Amendment or failed to protect him in violation of the Fourteenth Amendment, the Court declines to address the Phelps County Defendants' untimely exhaustion argument.

retaliatory actions" for engaging in protected speech. Hartman v. Moore, 547 U.S. 250, 256, (2006); see also Nieves v. Bartlett, --- U.S. ---, 139 S.Ct. 1715, 1722 (2019). To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must show that (1) he exercised a constitutionally protected right, (2) a governmental official took adverse action against him, and (3) the adverse action was motivated at least in part by the exercise of the constitutional right. See Peterson v. Kopp, 754 F.3d 594, 602 (8th Cir. 2014) (citing Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). The Eighth Circuit has held that the First Amendment protects a prisoner's "right to be free from retaliation for availing one's self of the prison grievance process[.]" Santiago v. Blair, 707 F.3d 984, 991 (8th Cir. 2013); see also Haynes v. Stephenson, 588 F.3d 1152, 1155-56 (8th Cir. 2009) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity.") (internal quotation marks and citation omitted).

Because Plaintiff was a detainee at the time of the alleged events, his related claim that Phelps County Defendants were deliberately indifferent to his safety, or failed to protect him, arises under the Fourteenth Amendment's Due Process Clause. See Johnson v. Leonard, 929 F.3d 569, 575 (8th Cir. 2019) (citing Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004)). "Due process protects pretrial detainees both from deliberate exposure to violence and from failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted." Wilkins v. Davis, 963 F.2d 377 (8th Cir. 1992) (citations and quotations omitted). To establish an unconstitutional failure to protect, a plaintiff must demonstrate (1) that he was incarcerated under conditions posing a substantial risk of serious harm, and (2) that the defendant was "deliberately indifferent to the substantial risk of serious harm." Chavero-Linares v. Smith, 782 F.3d 1038, 1041 (8th Cir. 2015) (quotation omitted).

7

The record establishes that Plaintiff exercised his constitutionally protected right by utilizing the jail's grievance process to complain about lack of exercise, recreation, and access to the law library. The record also establishes that detainee Brown assaulted and injured Plaintiff. However, Phelps County Defendants presented undisputed evidence demonstrating that they did not instruct or encourage detainee Brown to assault Plaintiff for any reason, much less in retaliation for Plaintiff's use of the grievance process. Each Phelps County Defendant submitted signed affidavits averring that he has "never asked or encouraged an inmate to assault another for any purpose[.]" [ECF No. 75-1 at 146,148, 150, 152]  Phelps County Defendants further refuted Plaintiff's claim that they encouraged the assault in retaliation for Plaintiff's use of the grievance process, explaining that inmate fights, which can evolve into larger brawls or riots, are dangerous and significantly more disruptive than the relatively minor inconvenience of processing inmate grievances. [Id.]

Confronted with this evidence, Plaintiff had the burden to show specific facts in the record that create a genuine issue for trial as to whether Phelps County Defendants (1) acted in retaliation for Plaintiff's exercise of his First Amendment rights and/or (2) instructed or encouraged detainee Brown to assault Plaintiff. Plaintiff presents no evidence in support of his claims.

The Court recognizes that pro se pleadings should be liberally construed and held to less stringent standards when facing a motion for summary judgment. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002).  However, even a pro se plaintiff "is not permitted to merely rest on his pleading but must instead set forth sufficient evidence from which a reasonable jury could find in his favor on all elements of his claims." Johnson v. Hamilton, 452 F.3d 967, 972 (8th Cir. 2006). Plaintiff failed to meet his burden by identifying any facts in the record that create a genuine issue for trial as to whether Phelps County

8

Defendants either retaliated against him for exercising his First Amendment rights or were deliberately indifferent to his safety. The Court therefore grants Phelps County Defendants summary judgment on Plaintiff's section 1983 claims.

### B. Medical Staff Defendants' motion for summary judgment

Medical Staff Defendants move for summary judgment on Plaintiff's claim that they were deliberately indifferent to his serious medical needs that resulted from the assault. [ECF No. 70] Specifically, Medical Staff Defendants assert they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies as required by the PLRA, 42 U.S.C. § 1997(a); and (2) Medical Staff Defendants did not act with deliberate indifference because they provided Plaintiff with regular care and treatment and properly referred him to outside providers.

The PLRA provides that a prisoner may not bring an action under section 1983 "until such administrative remedies as are available are exhausted." 47 U.S.C. § 1997e(a). The purpose of the PLRA's exhaustion requirement is to afford corrections officials "the time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006) (quoting Porter v. Nussle, 534 U.S. 516, 525 (2002)). "Courts in this district have consistently confirmed that the PLRA's exhaustion requirement applies to claims of deliberate indifference against entities like [private healthcare corporations] and their employees." Woodson v. Unknown, No. 4:21-CV-314 HEA, 2022 WL 3211419, at *2 (E.D. Mo. Aug. 9, 2022) (collecting cases).

"Exhaustion" under section 1997e(a) [of the PLRA] means "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." Hammett v. Cofield, 681 F.3d 945, 947 (8th Cir. 2012) (emphasis in original) (quotation omitted). "An inmate satisfies § 1997e(a) by pursuing 'the prison grievance process to its final stage' to 'an

9

adverse decision on the merits.'"  Porter v. Sturm, 781 F.3d 448, 451 (8th Cir. 2015) (quoting Burns v. Eaton, 752 F.3d 1136, 1141 (8th Cir. 2014)).

In support of their motion for summary judgment, Medical Staff Defendants provided the Phelps County Jail's "Grievance Procedure."  [ECF No. 72-7]  According to the procedure, an inmate initiates the grievance process by filing a grievance, including specific supporting details, with the jail supervisory staff.  [ECF No. 72-7]  A supervisory staff member investigates and responds to all grievances.  [Id.]  If an inmate is dissatisfied with the response, he may submit a grievance appeal to supervisory staff within forty-eight hours of receiving the response.  [Id.]  If the inmate is dissatisfied with the supervisory staff's response to the grievance appeal, he may submit a jail administrator appeal within forty-eight hours of receiving the response.  [Id.]  The Grievance Procedure states:  "Your failure to follow the detailed Grievance Procedure will disqualify you from the grievance process."  [Id.]

The summary judgment record demonstrates that Plaintiff filed a grievance asserting "this stitch is not high enough and my tear duct is going to remain torn…. [I] need to go back to the hospital immediately to get another stitch[.]"  [ECF No. 72-8 at 3]  Defendant Dowdy responded, and Plaintiff submitted a timely grievance appeal to the jail's supervisory staff.  [Id. at 1, 3]  In the grievance appeal, Plaintiff alleged a general "failure to ensure all reasonable measures have been t[aken] to address my serious injury and prevent further pain and suffering that has occurred and will in fact result in on-going pain as well as eye damage…."  [Id. at 1]  Supervisory staff responded to the grievance appeal.  [Id.]  Based on the record before the Court, Plaintiff did not file a jail administrator appeal.

Plaintiff did not exhaust his available administrative remedies because he failed to properly follow the steps of the jail's Grievance Procedure.  See Muhammad v. Mayfield, 933 F.3d 993,

10

1003 (8th Cir. 2019).  Furthermore, Plaintiff's grievance did not raise the specific factual allegations that appear in the third amended complaint.  See Townsend v. Murphy, 898 F.3d 780, 784 (8th Cir. 2018).  The grievance related to the location of the stitch near Plaintiff's eye.  However, the third amended complaint alleged that Medical Staff Defendants failed to remove the stitch "in about 3 days," "schedule follow-up visits for physical therapy for Plaintiff's eye," and "administer the medicine prescription daily[.]"  [ECF No. 17 at 42]   Because he did not properly grieve these issues before filing suit in Court, Plaintiff failed to exhaust his section 1983 claims against Medical Staff Defendants.

Even if Plaintiff had exhausted all available administrative remedies, his deliberate indifference claim fails on the merits.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  Johnson, 929 F.3d at 575 (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted)). As a pretrial detainee, Plaintiff is "entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment."  Id. (quoting Hartsfield, 371 F.3d at 457).

To establish deliberate indifference, a plaintiff must show that (1) he suffered an objectively serious medical need and (2) the defendants knew of the need but deliberately disregarded it.  Hartsfield, 371 F.3d at 457.  "Deliberate indifference is more than negligence, more even than gross negligence[.]" Johnson, 929 F.3d at 575 (quoting Fourte v. Faulkner Cnty., 746 F.3d 384, 387 (8th Cir. 2014)).  "It may be found where medical care is so inappropriate as to evidence intentional maltreatment."  Id. (internal quotation omitted).

Applying these legal principles to Plaintiff's claims, Plaintiff has not introduced evidence from which a reasonable jury might find that Medical Staff Defendants violated Plaintiff's

11

constitutional rights when treating his medical need. Plaintiff alleges that Medical Staff Defendants failed to "adhere to the orders and treatment plan of an outside doctor" because they neither removed the stitch within three days nor provided the prescribed physical therapy and medication. [ECF No. 17 at 59] However, a review of the April 14, 2017 treatment notes from Phelps County Regional Medical Center reveals that the emergency room doctor directed that "stitch needs to be taken out in 5-7 days," not three days, as Plaintiff claims.[5] [ECF No. 72-5 at 26] Furthermore, none of Plaintiff's medical records reflect a recommendation, much less an order, for physical therapy.

Finally, although Plaintiff claims that Medical Staff Defendants did not properly administer his daily medications, he does not identify which medications were delayed or denied. The summary judgment record reveals that, on April 14, the emergency room doctor prescribed Plaintiff Afrin nasal spray, Claritin, and Augmentin. [ECF No. 72-5 at 24-25] Defendant Burris declined to prescribe the Afrin spray, modified the prescriptions for Augmentin and Claritin, and prescribed ibuprofen. The fact that Defendant Burris did not agree with every aspect of the emergency room physician's treatment plan does not demonstrate deliberate indifference. See Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008) ("mere disagreement with treatment decisions does not rise to the level of a constitutional violation"); Taylor v. Turner, 884 F.2d 1088, 1090 (8th Cir. 1989) (medical staff are entitled to exercise their professional judgment in making medical decisions). Instead, the record reflects that Medical Staff Defendants sent Plaintiff to the emergency room for outside tests and treatment, considered the recommendations of the emergency room physician, provided Plaintiff follow-up care, and exercised their medical judgment in treating Plaintiff's injury. A reasonable factfinder could not conclude that the Medical

---

[5] Based on the summary judgment record, it is not clear when or by whom the stitch was removed.

Staff Defendants were deliberately indifferent to Plaintiff's serious medical needs. The Court therefore grants Medical Staff Defendants summary judgment on Plaintiff's deliberate indifference claim.

### IV. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Phelps County Defendants' and Medical Staff Defendants' motions for summary judgment [ECF Nos. 70 & 73] are **GRANTED**.

A separate judgment in accordance with this Order and Memorandum is entered this same date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of December, 2022